CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

September 26, 2024

LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

|  |  |  |
|---|---|---|
| VLADIMIR KRUGLYAK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-024 |
| | ) | |
| v. | ) | By:   Michael F. Urbanski |
| | ) | Senior United States District Judge |
| HOME DEPOT U.S.A., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Vladimir Kruglyak, proceeding pro se, initiated this action against defendants Home Depot U.S.A., Inc. ("Home Depot") and Karen J. Phoebus ("Phoebus") for damages arising from the online purchase of a Whirlpool bathtub. See Compl., ECF No. 1-3. Pending before the court are Kruglyak's Objections, ECF No. 66, to the Report and Recommendation issued by United States Magistrate Judge Pamela Meade Sargent,[1] ECF No. 62, regarding Kruglyak's Motion for Preliminary or Permanent Injunction, ECF No. 31, and Home Depot's Motion for Summary Judgment, ECF No. 33. Also pending before the court are Home Depot's Final Motion for Summary Judgment, ECF No. 80, in which it consented to judgment on Count 2, alleging breach of contract, in the amount of Kruglyak's actual damages, consisting of "$1,894.35 for the cost of the bathtub and $1,802 for shipping, for a total of $3,696.35." Final Mot. for Summ. J., ECF No. 80, ¶ 4. In recent days, Kruglyak has filed his own Motion for Summary Judgment, ECF No. 96, as to Counts One, Three, Nine, and Eleven.

---

[1] The court referred all non-dispositive pretrial motions to Judge Sargent under 28 U.S.C. § 636(b)(1)(A), and all dispositive motions to Judge Sargent under 28 U.S.C. § 636(b)(1)(B). Order, ECF No. 12.

This memorandum opinion addresses the issues raised in the Report and Recommendation and Objections, ECF Nos. 62, 66, and the various motions for summary judgment, ECF Nos. 31, 33, 80, and 96.[2]

Following review of the record, including the Report and Recommendation and motions for summary judgments, and relevant legal authority, the court will enter an Order providing as follows:

(1) **ADOPTING** the Report and Recommendation, ECF No. 62, in **PART** and **REJECTING** it in **PART**;

(2) **DENYING** Kruglyak's Motion for Preliminary or Permanent Injunction, ECF No. 31;

(3) **GRANTING** Home Depot's Motion for Summary Judgment, ECF No. 33, in **PART** and **DENYING** it in **PART**;

(4) **DENYING** Kruglyak's Motion for Summary Judgment, ECF No. 96;[3]

(5) **GRANTING** Home Depot's Final Motion for Summary Judgment, ECF No. 80, as to Count Two, but **DENYING** it as to Count One.

Having fully reviewed the record in this case, the court concludes that it does not need oral argument as it would not aid the decisional process.

---

[2] Kruglyak's most recent filings, Motion for Adverse Inference Order, ECF No. 99; Notice of Deposition of Karen Phoebus, ECF No. 105; Motion to Admit Delivery Receipt into Evidence, ECF No. 106; a letter addressed to the Virginia Attorney General complaining of being "a victim of inducement into a sales contract by false advertisement," ECF No. 107, and an Affidavit in Support of His Motion for Adverse Inference and Sanctions," ECF No. 108, are not addressed in this memorandum opinion and remain pending for future resolution by the court.

[3] Kruglyak's recently filed Motion for Summary Judgment concerns four of his claims, Counts One, Three, Nine, and Eleven. For the reasons stated in this memorandum opinion, Counts Three, Nine, and Eleven are not actionable and will be dismissed. Because genuine issues of material fact remain as to Count One, summary judgment is not appropriate for either Kruglyak or Home Depot on that Count.

The court agrees with the Report and Recommendation to the extent that it finds Count Two, alleging breach of contract, to be actionable. The court agrees with the Report and Recommendation that Kruglyak may not recover consequential damages in the form of lost rental income under Count Two, and his recovery is limited to recovery of the purchase price of the bathtub plus incidental damages consisting of the transportation cost to return the bathtub to Home Depot.

The court further agrees with the Report and Recommendation to the extent that it concludes that there is no actionable claim for breach of the Virginia Consumer Protection Act as alleged in Count Three; breach of the implied warranty of merchantability as alleged in Count Five; unjust enrichment as alleged in Count Six; breach of the Magnuson Moss Warranty Act as alleged in Count Seven; constructive fraud as alleged in Count Nine, and negligence as alleged in Count 10. Counts Three, Five, Six, Seven, Nine, and Ten will be dismissed.

The court disagrees with the Report and Recommendation to the extent that it recommends dismissal of Count One, which sufficiently alleges actual fraud in the inducement. Kruglyak may pursue his claim for actual fraud in the inducement and seek to recover actual and punitive damages resulting therefrom, if proven.[4]

The court likewise disagrees with the Report and Recommendation to the extent that it recommends dismissal of Counts Four, alleging breach of express warranty, and Count

---

[4] Kruglyak seeks punitive damages in Count 11. The recovery of punitive damages is not a stand-alone cause of action. Rather, an award of punitive damages, if supported by the evidence, is a remedy for certain claims. Here, the only claim for which punitive damages may be recovered, if proven at trial, is for Count One, alleging actual fraud in the inducement. Because Kruglyak's claim for punitive damages is a remedy recoverable, if proven, for breach of Count One, Count Eleven will be **DISMISSED** as **MOOT**.

Eight, seeking damages resulting from Kruglyak's revocation of acceptance under Va. Code §8.2-608. It is worth noting, however, that as with Count Two, Kruglyak may not seek recovery for lost rental income under Counts Four and Eight, and his recovery is limited to the refund of the purchase price of the bathtub plus incidental damages consisting of the transportation cost to return the bathtub to Home Depot.

In that regard, the court notes that Home Depot, in its Final Motion for Summary Judgment, ECF No. 80, consented to a judgment for breach of contract as alleged in Count Two, in the amount of $3,696.35, which it asserts represents Kruglyak's actual damages. "The actual damages at issue are $1,894.35 for the cost of the bathtub and $1,802 for shipping, for a total of $3,696.35." Final Mot. for Summ. J., ECF No. 80, at ¶ 4. As Kruglyak makes no other claim for damages apart from his lost rental income, the court will grant judgment for Kruglyak in the amount of $3,696.35, for breach of contract on Count Two. As these damages would duplicate any those recoverable under Counts Four and Eight, those claims are effectively mooted by Home Depot's consent to judgment on Count Two.

In sum, because of Home Depot's consent to judgment in the amount of $3,696.35 on Count Two, and the dismissal of Counts Three, Five, Six, Seven, Nine, Ten, and Eleven, what remains to be decided in this case is Kruglyak's claim of actual fraud in the inducement alleged in Count 1. The court will enter a Scheduling Order and set this case for trial on Count 1.

## I. BACKGROUND

The center of this dispute is Kruglyak's allegation that the Whirlpool bathtub that Kruglyak purchased online from Home Depot is different from the bathtub that was delivered to him. On or about June 3, 2021, Kruglyak found an advertisement of a particular tub on

Home Depot's website. Compl., ECF No. 1-3, ¶ 8. The tub was priced at $1,799 before tax, with free shipping. Id.; see also Compl., Ex. A. From June 3, 2021, through June 21, 2021, Kruglyak made multiple phone calls to "defendants," in which he asked questions about the tub. Id. ¶ 10.[5] Home Depot confirmed that the particular tub from the advertisement was not in the showroom of the Home Depot store closest to Kruglyak. Id. Home Depot did not indicate to Kruglyak that the online advertisement of the tub was incorrect in any way. Id. ¶ 10. Kruglyak purchased the tub for a total of $1,894.35 on June 22, 2021, and, around July 7, 2021, Home Depot delivered the tub to Kruglyak's home in a large wooden container. Id. ¶¶ 11, 12; Ex. C.

Kruglyak unpackaged the tub on August 22, 2021, at which point he discovered that the tub he received lacked certain features of the tub he ordered, including a control panel, LED lights, and a water heater. Id. ¶¶ 13, 14; Ex. E. After unpackaging it, Kruglyak contacted Karen Phoebus—a manager at the Home Depot store in Bristol, Virginia—multiple times to explain that he received the wrong tub and to request that Home Depot refund him for the cost of the missing components or exchange the tub for the correct model. Id. ¶ 15; Ex. F (requesting a refund from Phoebus in the amount of $829, the cost of the missing parts). Kruglyak also contacted the tub's manufacturer to clarify whether the tub he received was a different model from the tub depicted in the advertisement. Id. ¶ 18. The manufacturer confirmed that the tub in the advertisement—containing the features that Kruglyak wanted— was a different model from what he received. Id.

---

[5] Kruglyak does not specify to whom he spoke at Home Depot during this period. Accordingly, the court will refer generally to the unspecified group as "Home Depot."

Kruglyak alleges that Home Depot refused to supply the missing parts and instead offered store credit for the tub's return, subject to Kruglyak returning the tub to a Home Depot location in Atlanta, Georgia, at his expense. Id. ¶¶ 16, 20; Ex. K, at 1–2.[6] A third-party logistics company, whom Kruglyak contacted for a quote, estimated that the shipping and handling costs to return the tub to Atlanta would be $1,802.53. Ex. K, at 3.

Kruglyak asserts that the tub has prevented him from finishing his home renovation project, which has deprived him of rental income of at least $250 per day. Id. ¶ 21.[7]

Kruglyak initially filed this action in the Circuit Court of Bristol, Virginia, asserting eleven claims: fraudulent misrepresentation (Count One), breach of contract (Count Two), violations of the Virginia Consumer Protection Act (Count Three), violations of the Uniform Commercial Code for breach of express and implied warranties and for failure to honor his request for a refund (Counts Four, Five, and Eight), unjust enrichment (Count Six), violation of the Magnuson-Moss Warranty Act (Count Seven), constructive fraud (Count Nine), negligence (Count Ten), and a separate cause of action for punitive damages (Count Eleven). Compl., ECF No. 1-3. Kruglyak asks the court for compensatory damages, along with treble, statutory, and punitive damages, and attorney's fees and costs. Id. at 14–16.

Defendants removed the case to this court on June 3, 2022, ECF No. 1, and Kruglyak filed a motion to remand, ECF No. 8, which Judge Sargent denied. Order, ECF No. 16. Phoebus filed a motion to dismiss the claims against her for failure to state a claim on the

---

[6] Exhibit K, appended to Kruglyak's complaint, is an email from PayPal indicating that Home Depot has offered a full refund to Kruglyak, not just a store credit. However, the email confirms that Home Depot would only issue the refund upon Kruglyak bringing the tub to an Atlanta, Georgia, location.

[7] Kruglyak estimates the daily rental value as $250 based on a comparable short-term rental in the area. See Compl., Ex. L (showing a VRBO webpage listing another Bristol, Tennessee, home at $250 per night).

grounds that she—acting within the scope of her employment with Home Depot—should not be subject to personal liability as to Kruglyak's claims. ECF No. 3. On March 28, 2023, the court granted Phoebus's motion, adopting in its entirety the Report and Recommendation submitted by Judge Sargent. Order, ECF No. 19.[8]

On September 12, 2023, Kruglyak filed a motion for a preliminary or permanent injunction, ECF No. 31, and, on October 10, 2023, Home Depot filed a motion for summary judgment on all claims, ECF No. 33. Judge Sargent held an in-person hearing on the motions on November 27, 2023, and, on February 6, 2024, submitted a Report and Recommendation, recommending that the court deny Kruglyak's motion for injunctive relief, grant Home Depot's motion for summary judgment on all claims except breach of contract, and limit Kruglyak's potential recovery on the breach of contract claim to direct damages. R&R, ECF No. 62, at 23–24. On February 16, 2024, Kruglyak filed timely objections to Judge Sargent's recommendations regarding the summary judgment motion in the Report and Recommendation. Pl.'s Objs., ECF No. 66.[9]

---

[8] The court later denied Kruglyak's motions to reconsider Phoebus's dismissal on February 15, 2024. Mem. Op. & Order, ECF Nos. 63, 64. Kruglyak filed a notice appealing the court's decision the next day. See Pl.'s Notice of Interlocutory Appeal, ECF No. 69. Because the interlocutory appeal addresses only the individual liability of the Home Depot manager, Karen Phoebus, and not the liability of Home Depot, the court has jurisdiction to address issues related to Home Depot. See Order, ECF No. 94; see also Engel v. Buchan, No. 10-C-3288, 2011 WL 13151374, at *1 (N.D. Ill. June 8, 2011) ("Interlocutory appeals by a defendant do not, however, perforce divest the district court of jurisdiction over claims brought against other defendants—that is, issues that are not "aspects of the case involved in the appeal." (citing Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (per curiam))).

[9] Kruglyak also later filed "supplemental objections and evidence" to the Report and Recommendation. ECF No. 85. However, these supplemental objections were filed on April 11, 2024, well after his deadline to submit them. Nonetheless, the court has reviewed the objections and finds that they do not affect the court's analysis with respect to the motions.

On April 8, 2024, Home Depot filed a Final Motion for Summary Judgment, in which it consented to judgment in Kruglyak's favor on Count Two, alleging breach of contract, for the total actual damages in the case—$3,696.35 ($1,894.35 that he paid for the tub and $1,802 for the shipping and handling costs to return it). ECF No. 80. On August 23, 2024, Kruglyak filed his own Motion for Summary Judgment, in which he seeks judgment in his favor on all claims and asks the court for damages in the amount of $289,000, trebled. ECF No. 96.

## II. OBJECTIONS

Any party may "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen (14) days of being served with a copy of the report. Fed. R. Civ. P. 72(b); see also 28 U.S.C. § 636(b)(1). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). However, "objections need not be novel to be sufficiently specific," Elijah v. Dunbar, 66 F.4th 454, 461 (4th Cir. 2023) ("[D]istrict courts must solely consider the specificity, not the novelty, of objections to magistrate recommendations."), and pro se filings must be construed liberally, Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Therefore, "when reviewing pro se objections to a magistrate's recommendation, district courts must review de novo any articulated grounds to which the litigant appears to take issue." Elijah, 66 F.4th at 460–61 (citing Martin v. Duffy, 858 F.3d 239, 245–46 (4th Cir. 2017)). For the portions of the report to which there are no objections, the "court need not conduct a de novo review," "but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life &

Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (internal citation omitted). "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1).

Here, Kruglyak has filed objections to the Magistrate Judge's recommendation regarding Home Depot's summary judgment motion, ECF No. 33. Kruglyak did not object to the Magistrate Judge's recommendation regarding his Motion for Preliminary or Permanent Injunction, ECF No. 31. Accordingly, the court will address Home Depot's summary judgment motion de novo and will review the Magistrate Judge's report regarding the Motion for Preliminary or Permanent Injunction for clear error.

### III.   DISCUSSION

#### A. Motion for Preliminary or Permanent Injunction

On September 12, 2023, Kruglyak filed a motion for a preliminary or permanent injunction "ordering Defendants to stop withholding the return and/or exchange of the bathtub." Pl.'s Mot., ECF No. 31. In support of his motion, Kruglyak argues that, because the tub has not been returned to Home Depot, it is obstructing the bathroom and depriving him of the rental income he could otherwise accrue if he had a functional tub. Home Depot opposed the motion, ECF No. 32, and Kruglyak filed a reply, ECF No. 34.

In the Report and Recommendation, Judge Sargent recommends that the court deny the motion because, under Virginia law, injunctive relief is improper when a plaintiff can be made whole by monetary damages. R&R, ECF No. 62, at 6–7. No objections were filed to

Judge Sargent's Report and Recommendation as to this motion.[10] The court has reviewed the portion of the Report and Recommendation on this motion and is of the opinion that it contains no clear error and should be accepted. Accordingly, Kruglyak's motion for injunctive relief, ECF No. 31, is **DENIED**.

### B. Motions for Summary Judgment

Pending before the court are three motions for summary judgment: Home Depot's First Motion for Summary Judgment, ECF No. 33, Home Depot's Final Motion for Summary Judgment, ECF No. 80, and Kruglyak's Motion for Summary Judgment, ECF No. 96. Considering the Report and Recommendation and the three motions for summary judgment, the court will address each of Kruglyak's eleven claims.

### 1. Legal Standard

Under Federal Rule of Civil Procedure 56, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

---

[10] As explained above, Kruglyak filed objections to the Report and Recommendation, but only as to the recommendations regarding Home Depot's motion for summary judgment. ECF No. 66.

of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249).

## 2. Analysis

### i.   Contract and Tort Liability

#### a.   Source-of-Duty Rule

The allegations in Kruglyak's complaint center around three instances of wrongdoing by Home Depot: (1) Home Depot's misrepresentation of the features of the tub available for purchase; (2) Home Depot's failure to deliver the tub that it advertised on its website; and (3) Home Depot's offer to refund him for the tub contingent on Kruglyak returning the tub to Home Depot at his expense. Kruglyak's claims for these allegations of wrongdoing, in eleven causes of action, arise in both contract and in tort.[11]

---

[11] The court addresses Kruglyak's statutory claims in a separate section of this opinion.

Under Virginia law, to "determine[e] whether a cause of action sounds in tort, contract, or both, 'the source of the duty violated must be ascertained.'" MCR Fed., LLC v. JB&A, Inc., 294 Va. 446, 458, 808 S.E.2d 186, 192–93 (2017) (quoting Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998)). The "source-of-duty rule delineates the boundary between tort and contract claims to protect against 'turning every breach of contract into a tort.'" Harrell v. DeLuca, 97 F.4th 180, 189 (4th Cir. 2024) (quoting Tingler v. Graystone Homes, Inc., 298 Va. 63, 81, 834 S.E.2d 244, 254 (2019)). Accordingly, Virginia courts "have consistently adhered to the rule that, in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." Id. In other words, "[n]o matter the alleged harm, tort liability cannot be imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required him to do it anyway." Tingler, 298 Va. at 81, 834 S.E.2d at 254; see also Richmond Metro. Auth., 256 Va. at 559, 507 S.E.2d at 347 ("A tort action cannot be based solely on a negligent breach of contract.").

Under Virginia law, the elements of a breach of contract action are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004). Here, the evidence shows that Kruglyak and Home Depot created a contract through Kruglyak's online purchase of a bathtub, that Home Depot breached that contract by providing the incorrect tub, and that Kruglyak has been damaged as a result. Compl., ECF No. 1-3, ¶¶ 32–34. Home Depot, for its part, does not dispute that a contract was created through the sale of the bathtub or that it

delivered the wrong tub. Instead, Home Depot's only argument on this claim is that damages should be limited to Kruglyak's recoverable damages, consenting to judgment for breach of contract encompassing refund of the purchase price plus incidental damages consisting of transportation costs to return the bathtub. Accordingly, as recognized in the Report and Recommendation, Kruglyak has properly asserted a breach of contract claim in this action, and Home Depot's motion for summary judgment on this claim is **DENIED**.[12]

Kruglyak separately alleges, however, that Home Depot's misrepresentation of the tub's components in its online advertisement constitutes the tort of fraudulent misrepresentation (Count One), or, in the alternative, the torts of constructive fraud (Count Nine)[13] and negligence (Count Ten). Id. ¶¶ 23–31, 65–68. Accordingly, to assert these tort claims, the court must determine whether Home Depot owed a common-law duty, existing outside of the duties arising under the contract.

"Virginia law distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract." Harrell, 97 F.4th at 190 (quoting City of Richmond v. Madison

---

[12] Kruglyak also brings a claim for unjust enrichment in Count Six of his complaint. To succeed on an unjust enrichment claim in Virginia, a plaintiff must show that: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." James G. Davis Constr. Corp. v. FTJ, Inc., 298 Va. 582, 597, 841 S.E.2d 642, 650 (2020). Further, unjust enrichment is an action in implied contract, meaning that the "existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." CGI Fed. Inc. v. FCi Fed., Inc., 295 Va. 506, 519, 814 S.E.2d 183, 190 (2018). The unjust enrichment claim fails because Kruglyak conferred no benefit on Home Depot, as it is undisputed that Kruglyak paid Home Depot for a tub and received a tub. In addition, the court has concluded that an express contract exists between Home Depot and Kruglyak regarding the purchase of the tub, precluding an unjust enrichment claim. Accordingly, Home Depot's motion for summary judgment is **GRANTED** on Count Six, alleging unjust enrichment.

[13] Constructive fraud is a claim for negligent misrepresentation under Virginia law. Richmond Metro. Auth., 256 Va. at 559, 507 S.E.2d at 347 (citing Mortarino v. Consultant Eng'g Servs., Inc., 251 Va. 289, 294, 467 S.E.2d 778, 782 (1996)).

Mgmt. Grp., Inc., 918 F.2d 438, 447 (4th Cir. 1990)); see also Tingler, 298 Va. at 82, 834 S.E.2d

at 255, n.11 ("Claims for fraudulent inducement . . . logically preexist before the contract

allegedly induced and thus stand as a viable tort claim." (citing Abi-Najm v. Concord Condo.,

LLC, 280 Va. 350, 363-64, 699 S.E.2d 483, 490 (2010)).

Similarly, a breach of contract can give rise to a fraud claim "if the defendant did not

intend to perform at the time of contracting." Flip Mortg. Corp. v. McElhone, 841 F.2d 531,

537 (4th Cir. 1988) (citing Colonial Ford Truck Sales v. Schneider, 228 Va. 671, 677, 325

S.E.2d 91, 94 (1985)). The plaintiff can establish a fraud claim by pointing to the defendant's

"intention" or "state of mind" when entering into the contract. Id. In Flip Mortg. Corp., for

example, the Fourth Circuit reasoned that a rational juror could conclude that, by knowingly

"submitting false revenue reports almost from the moment the contract was signed,"

defendants "never intended to abide by the terms of the contract." Id.

The Report and Recommendation recommended entry of summary judgment on

Count 1, alleging fraudulent misrepresentation, agreeing with Home Depot that "there is no

such actionable, independent cause of action under Virginia law." R. & R., ECF 62, at 13. To

be sure, the case relied upon by the Magistrate Judge for this conclusion, 313 Freemason v.

Freemason Assocs., Inc., 59 Va. Cir. 407 (Norfolk Cir. Ct. 2002), correctly recognizes that

actual fraud and fraudulent misrepresentation are not separate torts, but it did so in the context

of a complaint that alleged both actual fraud and fraudulent misrepresentation as separate

causes of action. The conclusion reached by the Norfolk Circuit Court that "[f]raudulent

misrepresentation is not an independent cause of action" from actual fraud does not compel

dismissal of Kruglyak's fraudulent misrepresentation claim alleged in Count 1 because Kruglyak makes but one fraud claim.

Review of the allegations of Count 1 makes it clear that Kruglyak has sufficiently alleged fraud in the inducement, which is independently actionable from his claim of breach of contract. Kruglyak alleges in Count 1 that Home Depot made false representations concerning the "true functions and features of the tub by photographic and verbatim product descriptions on the Home Depot website." Compl., ECF No. 1-3, ¶ 24. Kruglyak alleges that "[s]uch false statements, representations, and disclosures of fact were made with full knowledge of their falsity or with reckless disregard for the truth," id. at ¶ 25, and that he relied on these representations in purchasing the bathtub. Id. at ¶¶ 26-28. These allegations sufficiently allege fraud in the inducement, and are not barred by the source-of-duty rule. As the Virginia Supreme Court held in Tingler v. Graystone Homes, Inc., 298 Va. 63, 82, n.11, 834 S.E.2d 244, 255 (2019), "[c]laims of actual and constructive fraud arising solely out of a contractual relationship may be barred by the source-of-duty rule when the damages arise solely out of the underlying contractual relationship. Claims for fraudulent inducement, however, logically preexist before the contract allegedly induced and thus stand as a viable tort claim." As a result, the court will not accept the recommendation to dismiss Count 1, alleging actual fraud in the inducement.[14]

---

[14] The court recognizes that Home Depot challenges Count One on a motion for summary judgment, not a motion to dismiss. However, Home Depot's only argument in support of its motion is that Kruglyak fails to state a claim—not that the evidence is insufficient. See Mem. Supp., ECF No. 33-1, at 4–5. Kruglyak has sufficiently alleged a claim for actual fraud in the inducement, a viable claim under Virginia law. The court further notes that no scheduling order has been entered in this case, and as such, Kruglyak has not had an opportunity to develop his actual fraud in the inducement claim through discovery. Accordingly, the court will enter a scheduling order that includes certain discovery deadlines, after which Home Depot will have an opportunity to challenge the sufficiency of the evidence as to Count One.

On the other hand, the recommendation to dismiss Count Nine, alleging constructive fraud, and Count 10, alleging negligence, is firmly grounded in the law and will be adopted. Each of these claims are barred by the economic loss rule. "The economic-loss rule is a 'remedy-specific application of the source-of-duty rule' and prevents recovery in tort for 'damages which were within the contemplation of the parties when framing their agreement.'" Tingler, 834 S.E.2d at 264 (quoting Abi-Najm v. Concord Condo., LLC, 280 Va. at 360, 699 S.E.2d at 488. "[W]hen a plaintiff alleges and proves nothing more than disappointed economic expectations assumed only by agreement, the law of contracts, not the law of torts, provides the remedy for such economic losses." Filak v. George, 267 Va. at 618, 594 S.E.2d at 613. "The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society. Therefore, we hold that the plaintiffs did not assert a valid claim of constructive fraud against George because whatever duties George may have assumed arose solely from the parties' alleged oral contract." Id., 267 Va. at 618-19, 594 S.E.2d at 613-14 (internal citations omitted). As the court in Virginia Transformer Corp., v. P.D. George Co., 932 F. Supp. 156, 163 (W.D. Va. 1996), explained, while the economic loss rule does not bar claims of actual fraud in the inducement, it bars claims for constructive fraud. "Constructive fraud is effectively nothing more than a claim of negligence. Carried to its logical conclusion would emasculate the economic loss rule. Constructive fraud implies no greater duty for a defendant to be accurate in its representations than does a negligence standard. Thus the fraud exception to the economic loss rule is solely for actual fraud." Id.

Kruglyak has identified no common law duty owed by Home Depot from which a constructive fraud or negligence claim may arise. Again, Home Depot's failure to deliver the correct tub is a breach of Home Depot's duty that arises solely under the contract. Accordingly, Kruglyak's claims "are nothing more than allegations of negligent performance of contractual duties," Richmond Metro. Auth., 256 Va. at 559, 507 S.E.2d at 347, and, therefore, Kruglyak must seek recovery for his economic losses under that contract.

For these reasons, Home Depot's summary judgment motion is **DENIED** as to Count One alleging actual fraud, but **GRANTED** as to Counts Nine, alleging constructive fraud, and Count Ten, alleging negligence.

### b. Damages

The court now turns to Home Depot's argument that damages for the breach of contract should be limited to direct damages, instead of consequential damages. It is well-settled that damages for breach of contract are "limited to those losses which are reasonably foreseeable when the contract is made." Kamlar Corp. v. Haley, 224 Va. 699, 706, 299 S.E.2d 514, 517 (1983). Accordingly, direct damages—which are those that "arise 'naturally' or 'ordinarily' from a breach of contract"—are compensable. Roanoke Hosp. Ass'n v. Doyle & Russell, Inc., 215 Va. 796, 801, 214 S.E.2d 155, 160 (1975). In contrast, consequential, or "special," damages—which are those that arise from "'special circumstances' not ordinarily predictable"—are only compensable if the "the special circumstances were within the 'contemplation' of both contracting parties." Id. "Whether damages are direct or consequential is a matter of law for decision by the court." Pulte Home Corp. v. Parex, Inc., 265 Va. 518, 526, 579 S.E.2d 188, 192 (2003).

Kruglyak seeks compensatory damages for (1) lost rental income in the amount of $250 per day since Home Depot delivered the wrong tub, (2) the $1,894.35 that he paid for the tub, and (3) $1,802 for the shipping and handling costs that he would need to pay to return the tub. As to the first category of damages, there is no evidence in the record whatsoever suggesting that Kruglyak made Home Depot aware of his intention to use the tub for rental income-producing purposes when the contract was made. Instead, while Kruglyak alleges that he "made multiple phone calls" to Home Depot about the tub, these communications were for Kruglyak to "ask[] questions about the functions of the tub," and he provides no indication that he told Home Depot that he was intended to use the bathtub in a rental property. Compl., ECF No. 1-3, ¶ 10. Kruglyak also alleges that he found the advertisement for the bathtub on Home Depot's website and that he ultimately purchased the bathtub online as well, further undermining an argument that Home Depot knew about the rental income. Compl., ECF No. 1-3, ¶¶ 8, 11. Accordingly, the lost rental income that Kruglyak seeks plainly falls within the category of unforeseeable special damages that are not compensable for breach of contract. In contrast, Kruglyak's request for a full refund of what he paid for the tub, along with the incidental transportation costs to return it, are compensable as direct damages.

### ii. Statutory Liability

Kruglyak also brings five statutory claims: one claim under the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196 et seq., three claims for violations of the Uniform Commercial Code for breach of express and implied warranties and for failure to honor his request for a refund, and one claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301.

### a. Virginia Consumer Protection Act

The VCPA was enacted "to promote fair and ethical standards of dealings between suppliers and the consuming public," and, to achieve that goal, it prohibits certain "fraudulent acts or transactions by a supplier in connection with a consumer transaction." Id. §§ 59.1-197, 200(A). "To state a claim under the VCPA, a plaintiff must allege: '(1) a fraudulent act (2) by a supplier (3) in a consumer transaction." Student A v. Liberty Univ., Inc., 602 F. Supp. 3d 901, 917 (W.D. Va. 2022) (Moon, J.) (quoting BHR Recovery Cmtys., Inc. v. Top Seek, LLC, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018)). While a VCPA claim is "distinct from and in addition to common law fraud," Ballagh v. Fauber Enterprises, Inc., 290 Va. 120, 124, 773 S.E.2d 366, 368 (2015), "the VCPA requires a plaintiff to '"allege a fraudulent misrepresentation of fact,"' Hamilton v. Boddie-Noell Enterprises, Inc., 88 F. Supp. 3d 588, 591 (W.D. Va. 2015) (quoting Nationwide Mut. Ins. Co. v. Overlook, LLC, 785 F. Supp. 2d 502, 533 (E.D. Va. 2011)). Further, "[a]llegations of misrepresentation of fact must include the elements of fraud: a false representation, of material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage." Hamilton, 88 F. Supp. 3d at 591.

While Kruglyak's complaint states a claim for actual fraud in Count One, his claim of consumer fraud in violation of the VCPA alleged in Count Three fails for another reason. The VCPA only applies to "consumer transactions," which the act defines as the sale of goods "to be used primarily for personal, family or household purposes." Va Code § 59.1-198. Paragraph 21 of the Complaint makes it clear that the bathtub purchased by Kruglyak does not meet this definition. There Kruglyak alleges that he "is now unable to finish this renovation project of

the mother-in-law type of private accommodation for more than six months, suffering loss of rental income of at least $250 per day." Compl., ECF No. 1-3, ¶ 21. Because Kruglyak claims that the bathtub was to be used for rental property, the transaction at issue does not meet the definition of a consumer transaction.[15] Accordingly, the court will **GRANT** Home Depot's summary judgment motion as to Count Three.

### b. Virginia Uniform Commercial Code

Kruglyak brings three claims under the Virginia Uniform Commercial Code ("VUCC"): (1) breach of an express warranty under Va. Code § 8.2-313 (Count Four), (2) breach of the implied warranty of merchantability under Va. Code § 8.2-314 (Count Five), and (3) for failure to honor his revocation of acceptance, rejection, or cancellation of the purchase (Count Eight).

Count Four alleges a breach of express warranty. To state a claim for a breach of an express warranty, a plaintiff must establish "(1) the existence of a warranty; and (2) breach of that warranty." Knapp v. Zoetis Inc., No. 3:20-cv-191, 2021 WL 1225970, at *12 (E.D. Va. Mar. 31, 2021) (citation omitted). To establish the existence of an express warranty, the VUCC provides that a seller's "description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Va. Code § 8.2-

---

[15] This finding is not in contradiction with Kruglyak's inability to pursue lost rental income in connection with his breach of contract claim, Count Two. Kruglyak does not allege that he informed Home Depot that he intended to install the bathtub in a rental property with the intent of increasing the property's value. Accordingly, any lost rental income was not "within the 'contemplation' of both contracting parties," Roanoke Hosp. Ass'n, 215 Va. at 801, 214 S.E.2d at 160, so he is not entitled to special damages in the form of lost rental income in connection with Count Two. But Kruglyak's claim under the VCPA does not hinge on whether Home Depot knew that Kruglyak intended to use the bathtub in a rental property. Rather, the VCPA only protects consumer transactions, Student A, 602 F. Supp. 3d at 917, a category which does not include Kruglyak's purchase of the bathtub, as shown by his allegations that he intended to install the bathtub in a rental property and that he lost rental income because he received the wrong bathtub. See Compl., ECF No. 1-3, ¶ 21.

313(1)(b). "Any description of the goods, other than the seller's mere opinion about the product, constitutes part of the basis of the bargain and is therefore an express warranty." Martin v. Am. Med. Sys., 116 F.3d 102, 105 (4th Cir. 1997). To show breach, "Virginia law does not require proof of causation to state a breach of warranty claim." Id. In other words, "[i]t is unnecessary that the buyer actually rely upon it." Id.

Here, Kruglyak plainly provides sufficient evidence to establish that an express warranty was created, as he alleges that Home Depot provided a description of the tub on its website—with details regarding its components and features—and Kruglyak purchased the tub based on that description. Further, Kruglyak has shown that Home Depot breached that express warranty when it sold a tub that did not conform to that description. Accordingly, Home Depot's Motion for Summary Judgment on Kruglyak's express warranty claim, Count 4, is **DENIED**.

Kruglyak's claim in Count Five for breach of the implied warranty of merchantability, however, cannot succeed. Under the VUCC, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Va. Code § 8.2-314(1). Goods are merchantable if they "pass without objection in the trade" and "are fit for the ordinary purposes for which such goods are used." Va. Code § 8.2-314 (2)(a), (c). "To establish a breach of this implied covenant, a plaintiff must prove that the good was defective—that is, unreasonably dangerous for its ordinary or foreseeable use—and that such defect existed at the time of the sale." Bell v. True Mfg. Co., No. 2:20-cv-263, 2020 WL 10095356, at *5 (E.D. Va. Sept. 16, 2020), R&R adopted, No. 2:20-cv-263, 2020 WL

10099819 (E.D. Va. Nov. 2, 2020) (citing <u>Hyundai Motor Co. v. Duncan</u>, 289 Va. 147, 156, 766 S.E.3d 893, 898 n.8 (2015)).

Kruglyak alleges that the tub he received was missing certain features from the tub he ordered, including a control panel, LED lights, and a water heater. <u>Id.</u> ¶¶ 13, 14; Ex. E. While these features were important to Kruglyak, Kruglyak does not allege that the lack of those components made the tub dangerous, defective, or otherwise not "fit for the ordinary purposes for which such goods are used." Accordingly, Home Depot did not breach the implied warranty of merchantability, and the court **GRANTS** Home Depot's motion as to this claim.

Finally, Kruglyak claims that Home Depot failed to honor his rejection of the tub, revocation of acceptance, and cancellation of the transaction, in violation of the VUCC. Under Virginia law, "if the goods . . . fail in any respect to conform to the contract, the buyer may" reject those goods. Va. Code § 8.2-608(1). If the buyer accepts the goods, he may later revoke acceptance of non-conforming goods if the "non-conformity substantially impairs" its value to the buyer, and the buyer accepted it "on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured" or "without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." Va. Code § 8.2-608(1). Once a buyer has properly rejected or revoked acceptance of the goods, the buyer may cancel the transaction. Va. Code § 8.2-711.

The parties do not dispute that Kruglyak properly revoked his acceptance of the bathtub and canceled the transaction. Instead, Home Depot emphasizes that it did not refuse

to honor the revocation and cancelation; to the contrary, Home Depot complied by offering him a full refund of the purchase price of the bathtub. Kruglyak, for his part, takes issue with the fact that Home Depot's refund offer was conditioned on Kruglyak returning the tub to Home Depot at his expense. In other words, Kruglyak's claim is that Home Depot has failed to provide the proper remedy that it owes to Kruglyak following his revocation of acceptance.

When a buyer cancels, he may recover "so much of the price that has been paid," in addition to the damages he incurred by "covering" (i.e., purchasing other goods in substitution of the defective goods received from the seller) or "damages for nondelivery as provided in this title (§ 8.2-713)." Va. Code § 8.2-711. Section 8.2-713 provides that "the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time the when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this title (§ 8.2-715), but less expenses saved in consequence of the seller's breach." Section 8.2-715(1) provides that "[i]ncidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care of goods rightfully rejected. . . ." The Comment to § 8.2-715 makes it clear that a buyer who justifiably revokes acceptance may recover reasonable expenses as incidental damages: "1. Subsection (1) is intended to provide reimbursement for the buyer who incurs reasonable expenses in connection with the handling of rightfully rejected goods or goods whose acceptance may be justifiably revoked. . . . The incidental damages listed are not intended to be exhaustive but are merely illustrative of the typical kinds of incidental damages."

Thus, under the Virginia Uniform Commercial Code, once Kruglyak revoked acceptance and that revocation was accepted by Home Depot, Kruglyak was entitled to refund of his purchase price plus incidental damages, including transportation of the bathtub. The Report and Recommendation's conclusion that Home Depot's offer to refund the purchase price met its obligation under the VUCC following Kruglyak's revocation of acceptance ignores Kruglyak's ability under the Code to recover incidental damages, defined by statute to include "expenses reasonably incurred in . . . transportation and care of goods rightfully rejected." Va. Code § 8.2-715(1). Accordingly, the court cannot accept the recommendation to grant summary judgment on Count Eight simply because Home Depot offered to refund the purchase price conditioned on Kruglyak's shipment of the bathtub to Atlanta, the cost estimate for which Kruglyak alleges was "approximately equal to the cost of the tub." Compl., ECF No. 1-3, ¶ 62. As the Virginia Supreme Court held in Gasque v. Mooers Motor Car Co., Inc., 227 Va. 154, 162, 313 S.E.2d 384, 390 (1984), "the remedy [of revocation of acceptance], where successful, cancels a contract of sale, restores both title to and possession of the goods to the seller, restores the purchase price to the buyer, and as fairly as possible, returns the contacting parties to the status quo ante." Home Depot's refund of the purchase price, conditioned as it was on Kruglyak returning the bathtub to Atlanta, did not come close to restoring the parties to the status quo ante. As a result, the court **DENIES** Home Depot's motion for summary judgment as to Count Eight.

As the court has concluded that Kruglyak's Virginia Uniform Commercial Code claims for breach of express warranty and recovery of damages following revocation of acceptance under the VUCC, Counts Four and Eight, survives summary judgment, the court will consider

24

whether the undisputed evidence establishes the proper amount of damages owed to Kruglyak for Home Depot's breaches. Home Depot argues that the amount of damages on this claim should be limited to actual damages that would have been reasonably foreseeable by Home Depot at the time that Kruglyak purchased the bathtub—specifically, $1,894.35 that Kruglyak paid for the tub and $1,802 for the shipping and handling costs to return it. Kruglyak, for his part, asserts that, in addition to those expenses, Home Depot should also be liable for lost rental income, estimated at $250 per day, for each day that has passed since Home Depot delivered the tub.

As explained above, a buyer who revokes acceptance of goods may recover the price he has paid for the goods. Va. Code § 8.2-711. In addition, a buyer may recover both "incidental damages" and "consequential damages" from a seller's breach. Va. Code § 8.2-715. While the UCC provides its own definitions for "[i]ncidental damages" and "consequential damages," see §§ 8.2-715(1), (2), "the Supreme Court of Virginia continues to use the common law definition of direct and consequential damages" for VUCC violations, Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc., 446 F. Supp. 2d 551, 572 (E.D. Va. 2006). Accordingly, the court's analysis with respect to Kruglyak's damages for the breach of contract claim applies here. Kruglyak's recoverable damages under Counts Four and Eight, therefore, are limited to direct damages in a total amount of $3,696.35—$1,894.35 that he paid for the tub and $1,802 for the shipping and handling costs to return it.

### c.  Magnuson-Moss Warranty Act

Kruglyak also brings a claim for violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310, in Count Seven. The MMWA provides plaintiffs with a remedy

against a defendant who fails to comply with "a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). To prove a violation of the MMWA, a plaintiff must show "(i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." Temple v. Fleetwood Enterprises, Inc., 133 Fed. App'x 254, 268 (6th Cir. 2005).

A "written warranty" under the MMWA means "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A) (emphasis added). Accordingly, not all representations by a seller are actionable under the MMWA. To the contrary, "[p]romises about a product's quality or character do not constitute a 'written warranty' unless they promise 'a specified level of performance over a specified period of time.'"[16] Hill v. AQ Textiles LLC, 582 F. Supp. 3d 297, 312 (M.D.N.C. 2022) (collecting cases); see also 16 C.F.R. § 700.3(a) ("A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty."). Here, Kruglyak alleges a violation of the MMWA without pointing to the existence of a written warranty, and the court agrees that one does not exist on the record before it. There is no evidence suggesting that Home Depot

---

[16] While Kruglyak's claim for breach of express warranty survives based on Home Depot's description of the advertised bathtub, this description is insufficient to constitute a written warranty under the MMWA. Moreover, Kruglyak does not plead an MMWA claim for breach of express warranty, only implied warranty. See Compl., ECF No. 1-3, ¶¶ 59, 60.

made any guarantees of performance over a specified period of time, which precludes a finding of a written warranty here.

As to an implied warranty, the MMWA defines it as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). Because the court has already concluded that Kruglyak's claim for a breach of implied warranty of merchantability cannot prevail, Kruglyak's MMWA claim for implied warranty also fails. Accordingly, Home Depot's motion for summary judgment as to Kruglyak's MMWA claim, Count Seven, is **GRANTED**.[17]

### iii. Claim for Punitive Damages

Finally, the Report & Recommendation recommends dismissal of Count Eleven because "Kruglyak has not demonstrated any evidence of actions taken by Home Depot that constituted an 'independent, willful tort' separate and apart from its contractual duties that would justify a recovery of punitive damages." R&R, ECF No. 62, at 21. The court disagrees. Because Kruglyak has alleged actual fraud in the inducement in Count One, his claim for punitive damages cannot be denied at this stage. However, as noted in footnote 4, the punitive damages Kruglyak seeks as a remedy for his fraud in the inducement claim is not a separate cause of action. Rather it is remedy that may be awarded if actual fraud in the inducement is

---

[17] Further, Kruglyak's MMWA claim fails for the same reason his VCPA claim fails—he did not buy the bathtub as a consumer. Instead, he purchased it for his rental property to generate income. See Compl., ECF No. 1-3, ¶ 21. The MMWA, like the VPCA, only confers its private right of action on consumers. See 15 U.S.C. §§ 2301(3), 2310(d)(1); see also Velez v. RM Acquisition, LLC, 670 F. Supp. 3d 620, 632–34 (N.D. Ill. 2023) (explaining that the MMWA does not cover products sold "for commercial, not consumer use" (citing Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc., No. C-13-1803, 2014 WL 1048710, at *12 (N.D. Cal. Mar. 14, 2014))).

proven as alleged in Count One. Accordingly, Count 11, alleging a separate cause of action for punitive damages recoverable, if proven, under Count 1, is **DISMISSED** as **MOOT**.

## IV. CONCLUSION

For the reasons provided above, the court will **ADOPT IN PART** and **REJECT IN PART** the Report and Recommendation, ECF No. 62, **DENY** Kruglyak's motion for a preliminary or permanent injunction, ECF No. 31, **GRANT IN PART** and **DENY IN PART** Home Depot's motion for summary judgment, ECF No. 33, an **DENY** Kruglyak's Motion for Summary Judgment, ECF No. 96. Because the court also concludes that damages for Counts Two, Four, and Eight are limited to refund of the purchase price and incidental damages for the return transportation of the bathtub, the court will **GRANT** Home Depot's Final Motion for Summary Judgment, ECF No. 80, and award Kruglyak a total sum of $3,696.35 in damages against Home Depot on Count Two.

The only issue remaining is the claim of actual fraud in the inducement alleged in Count One. The court will set Count One for trial and issue a Scheduling Order.

An appropriate order will be entered.

Entered: September 25, 2024

Michael F. Urbanski
Senior United States District Judge

28