CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

March 25, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ Robin Bordwine
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **VLADIMIR KRUGLYAK**, ) | |
|     Plaintiff, ) | |
| ) | Civil Action No.: 1:22cv00024 |
| v. ) | |
| ) | **MEMORANDUM ORDER** |
| **HOME DEPOT U.S.A., INC.**, ) | |
|     Defendant. ) | |

On December 4, 2024, the court, on its own initiative, pursuant to Federal Rules of Civil Procedure Rule 11(c)(3), its contempt power and its inherent authority to protect the integrity of its proceedings and rulings, ordered the plaintiff to show cause why he should not be sanctioned for violating Federal Rules of Civil Procedure Rule 11(b) and/or held in contempt for citing fictitious cases in his Plaintiff's Reply To Defendant's Response In Opposition To Motion To Compel, (Docket Item No. 123).  The court further ordered the plaintiff to show cause why he should not be sanctioned for violating Rule 11(b) and/or held in contempt for misrepresenting the holding of various cases he cited in the same pleading.  The plaintiff timely responded to the court's Order.  (Docket Item No. 127) ("Response").  Although given the opportunity to do so, the defendant did not respond to the Order.

Rule 11(b)(1) states that "[b]y presenting to the court a pleading, written motion, or other paper … an attorney or unrepresented party certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that] … it is not being presented for any improper purpose, such as to harass[.]" FED. R. CIV. P. 11(b)(1).  The basic requirement of Rule 11 is

"that an unrepresented party or a represented party's attorney conduct a prefiling investigation of law and fact which is objectively reasonable under the circumstances." *Harmon v. O'Keefe*, 149 F.R.D. 114, 116 (E.D. Va. 1993) (citing *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991)); *see* FED. R. CIV. P. 11(b). It is well-settled that "[p]ro se litigants are entitled to consideration of their non-lawyer status." *Weathers v. Ziko*, 113 F. Supp. 3d 830, 833 (M.D. N.C. 2015). Furthermore, any sanction "must be limited to what suffices to deter" similar litigation misconduct by the offending party and "others similarly situated." FED. R. CIV. P. 11(c)(4); *see In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990) ("[T]he primary, or 'first' purpose of Rule 11 is to deter future litigation abuse."). The court must impose "the least extreme sanction reasonably calculated to achieve the appropriate punitive and deterrent purposes" of Rule 11. *Byrd v. Hopson*, 108 F. App'x 749, 754-56 (4th Cir. 2004) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1132 n.112 (11th Cir. 2001)). The court enjoys broad discretion both in determining whether a filing violated Rule 11(b) and in crafting any appropriate sanction. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Under Rule 11, courts may award sanctions of their own initiative. *See UBS Fin. Servs., Inc. v. Childress*, 2013 WL 5786444, at *3 (W.D. Va. Oct. 28, 2013) ("A court may sanction an attorney who has violated Rule 11(b), and the court may do so on its own initiative."). However, before a court may do so, it must issue a show cause order, as the court did in this case. *See In re Bees*, 562 F.3d 284, 289 (4th Cir. 2009) ("Rule 11 requires a district court to order counsel 'to show cause why conduct specifically described in the order has not violated Rule 11(b)' prior to imposing *sua sponte* sanctions in order to allow counsel to respond to specific asserted Rule 11 violations.") (quoting Fed. R. Civ. P. 11(c)(3)). "In issuing a show cause order, '[A] court is obliged to use extra care in imposing sanctions on offending lawyers.'" *Clehm v. BAE Sys., Inc.*, 2018 WL 3978183, at *3 (W.D. Va. May 9, 2018) (quoting

2

*Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002)). The court in *Hunter* noted that the Advisory Committee considered that a show cause order issued by a court on its own initiative would be used "in situations that are akin to a contempt of court …" 281 F.3d at 151.

As stated above, Kruglyak, the pro se plaintiff, both cited to fictitious cases and misrepresented the holding of various cases in a reply brief he filed with the court. In his Response to the court's show cause order, he conceded the inclusion of "fictitious cases and the mischaracterizations of case holdings," but he claimed this was not done with a purpose to mislead the court or to gain an unfair advantage. Instead, he stated that he, as a pro se litigant, relied in good faith on publicly available, free generative artificial intelligence, ("AI"), platforms to conduct legal research. Kruglyak explained that he had limited access to legal research tools, such as LexisNexis and Westlaw, to verify the authenticity and accuracy of his case citations. He further explained that, while he was unaware at the time he filed the pleading at issue that such generative AI platforms could produce fictitious or inaccurate case citations, he now has learned that fictitious citations and case summaries may be generated without clear warnings regarding their reliability.

The court notes that, while generative AI platforms, such as ChatGPT[1] and Gemini, can be useful tools for attorneys and pro se litigants alike, they continue to have their shortcomings. It has become widely known that such platforms sometimes "hallucinate," meaning they provide inaccurate responses. In the legal research context, these hallucinations can include the generation of fictitious case

---

[1] ChatGPT, owned by OpenAI, is one of the most popular generative AI models. Gemini is Google's AI model and was formerly known as Google Bard. *See* zdnet.com/article/best-ai-chatbot/ (last visited Mar. 20, 2025).

cites and misrepresentations of case summaries or holdings, as were provided by Kruglyak. *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D. N.Y. 2023), the flagship case on this subject, involved a personal injury suit brought against an airline, in which one of the attorneys testified he used ChatGPT for legal research because he had limited access to federal cases through the research services and databases at his firm. *See* 678 F. Supp. 3d at 456. He said he had heard of a new site that he incorrectly assumed was like a "super search engine called ChatGPT," which he used. *Mata*, 678 F. Supp. 3d at 456. The attorney entered various prompts into ChatGPT, which hallucinated holdings and cases. *See Mata*, 678 F. Supp. 3d at 456-57. He then included these fabricated cases in a response to a pending motion to dismiss. *See Mata*, 678 F. Supp. 3d at 450. When the attorney's reliance on fictitious cases came to light, the judge scheduled a show cause hearing, threatening sanctions under Rule 11(b)(2) and (c), among other things. *See Mata*, 678 F. Supp. 3d at 457-58. The attorneys subsequently lied to the court about their availability and doubled down on the cases, claiming they were not fabricated. *See Mata*, 678 F. Supp. 3d at 452, 458. One of the attorneys stated in a declaration that he could not "fathom that ChatGPT could produce multiple fictitious cases." *Mata*, 678 F. Supp. 3d at 458. The judge ultimately determined that the attorneys had acted subjectively[2] in bad faith and found sanctions were appropriate under Rule 11. *See Mata*, 678 F. Supp. 3d at 464. A $5,000 penalty was imposed upon the attorneys and their firm as a deterrent. *See Mata*, 678 F. Supp. 3d at 466.

---

[2] The Second Circuit requires a finding that the party acted with subjective bad faith when imposing sanctions *sua sponte* under Rule 11. *See Mata*, 678 F. Supp. 3d at 462 (citing *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013). However, most other courts have utilized an objective bad faith standard. *See, e.g., Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 148 (3d Cir. 2024); *Jenkins v. Methodist Hosps. of Dall., Inc.*, 478 F.3d 255, 264 (5th Cir. 2007); *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005).

In another case out of the Second Circuit – *United States v. Cohen*, 724 F. Supp. 3d 251, 259 (S.D. N.Y. 2024) – the court declined to impose sanctions as it found no subjective bad faith by counsel. In that case, Cohen's counsel, Schwartz, filed a brief in support of a request for the early termination of supervised release, which contained three fictitious cases. *See Cohen*, 724 F. Supp. 3d at 253-54. The district judge ordered Schwartz to provide copies of those cases, stating if he could not do so, he must "show cause in writing why he should not be sanctioned" pursuant to Rule 11(b)(2) and (c), among other things, for citing the fictitious cases. *United States v. Cohen*, 2023 WL 8635521, at *1 (Dec. 12, 2023). In response, Schwartz, Cohen and others involved in the case, filed declarations explaining how the fictitious cases came to be included in the brief. *See Cohen*, 724 F. Supp. 3d at 254-55. Cohen stated in his declaration that he had obtained the cases and summaries from Google Bard, which he was unaware was a generative text service that, like ChatGPT, could generate citations and case descriptions that appeared real but were not. *See Cohen*, 724 F. Supp. 3d at 254. Instead, he explained that he had understood Google Bard to be a "super-charged search engine." *See Cohen*, 724 F. Supp. 3d at 254. Cohen provided his counsel with the citations and case summaries the program generated, and his counsel added them to the filing without independently verifying their accuracy. *See Cohen*, 724 F. Supp. 3d at 254, 255. The district court noted that the Second Circuit required a finding of subjective bad faith before imposing *sua sponte* Rule 11 sanctions. *See Cohen*, 724 F. Supp. 3d at 258 (citing *Muhammad*, 732 F.3d at 108). Ultimately, the judge found that this standard was not satisfied under these circumstances and declined to impose sanctions. *See Cohen*, 724 F. Supp. 3d at 260.

While courts across the country have addressed this issue, the Fourth Circuit has yet to do so. This court encountered the issue in *Iovino v. Michael Stapleton*

*Assocs., Ltd.*, 2024 WL 3520170 (W.D. Va. July 24, 2024), in which Judge Cullen issued a show cause order to the plaintiff after she objected to the magistrate judge's grant of the defendant's motion for a protective order. In the plaintiff's objections, she cited fictitious cases and made up quotations. In particular, she cited two cases that did not appear to exist, and she cited a Supreme Court opinion and a Fourth Circuit opinion that existed, but she incorrectly attributed quotations to them. *See Iovino*, 2024 WL 3520170, at *7. The plaintiff also put great weight in her objections on *Menocal v. The GEO Grp., Inc.*, 2017 WL 4334000 (D. Colo. June 6, 2017), a case that had nothing to do with what the plaintiff claimed it did. *See Iovino*, 2024 WL 3520170, at *7. The defendant flagged all of these discrepancies in its opposition brief, describing them as the result of "ChatGPT run amok." *Iovino*, 2024 WL 3520170, at *7. Although the plaintiff provided supplemental authority to the court in support of her objections, she did not reply to explain the origins of the fictitious citations and quotations or who primarily was to blame for this "gross error." *Iovino*, 2024 WL, at *7. Judge Cullen stated, "[t]his silence is deafening." *Iovino*, 2024 WL 3520170, at *7. Therefore, the court, in order to "uphold the integrity of the[] proceedings and understand where the purportedly false references originated," ordered plaintiff's counsel to show cause why they should not be sanctioned under Rule 11(c). *See Iovino*, 2024 WL 3520170, at *7. However, the plaintiff filed an appeal to the Fourth Circuit, and counsel did not respond to the court's show cause order.[3]

As the court stated in *Iovino*, Rule 11(c) allows district courts to sanction parties when they act in bad faith and engage in deliberate misconduct in an effort to deceive the court. *See* 2024 WL 3520170, at *6 (citing *Parker v. N.C. Agric. Fin.*

---

[3] Thus, even though the Western District of Virginia has, in fact, encountered the issue, it has not had the opportunity to resolve it.

*Auth.*, 341 B.R. 547, 554 (E.D. Va. 2006), *aff'd sub nom. Iles v. N.C. Agric. Fin. Auth.*, 249 F. App'x 304 (4th Cir. 2007)). It also includes when attorneys do not take the "necessary care in their preparation" of court filings because such filings are an abuse of the judicial system, "burdening courts and individuals alike with needless expense and delay." *Iovino*, 2024 WL 3520170, at *6 (quoting *Cooter & Gell*, 496 U.S. at 398). A key purpose of Rule 11 is to incentivize attorneys "to stop, think[,] and investigate more carefully before serving and filing papers." *Iovino*, 2024 WL 3520170, at *6 (quoting *Cooter & Gell*, 496 U.S. at 398) (cleaned up). If counsel relies on AI or other technology to draft a filing, he remains responsible for ensuring the filing is accurate and does not contain fabricated caselaw or quotations. *See Iovino*, 2024 WL 3520170, at *6 (citing, *e.g.*, *Mescall v. Renaissance at Antiquity*, 2023 WL 7490841, at *1 n.1 (W.D. N.C. Nov. 13, 2023)).

Here, in his Response, Kruglyak states he has ceased relying on generative AI tools to identify caselaw without independently verifying each citation. He further states he has sought access to reliable legal research tools, including public law libraries and other credible databases. Kruglyak asks that the court treat the inclusion of the fictitious citations as a scrivener's error, and he requests the court's permission to amend the pleading to substitute accurate case citations for the erroneous ones. Relying on *Haines v. Kerner*, 404 U.S. 519 (4th Cir. 1972), and *In re Kunstler*, 914 F.2d 505, he asks the court not to impose sanctions. Specifically, he argues that, as a pro se litigant, he is entitled to leniency in procedural matters and should not be subjected to sanctions absent clear evidence of bad faith or intentional misconduct. *See Haines*, 404 U.S. at 520. Additionally, he argues that courts have discretion to consider a litigant's lack of legal resources and intent when determining whether to impose sanctions. *See In re Kunstler*, 914 F.2d at 514.

I find that the imposition of monetary sanctions is not appropriate in this case. Most importantly, Kruglyak has represented to the court that he was not aware the caselaw he cited was fictitious and/or that he misrepresented the holdings of cases. The court has no reason to doubt the veracity of this statement. Moreover, once brought to his attention, Kruglyak promptly admitted his use of generative AI tools in conducting legal research, the use of which produced the hallucinated results, and he has represented to the court that he now has access to more credible sources. Under these circumstances, the court finds that, while Kruglyak's actions were negligent, they do not evince bad faith, either subjective or objective, on his part. Nonetheless, the court **ORDERS** that, going forward, Kruglyak must identify any cases that are the result of legal research performed with generative AI, and he is responsible for verifying their accuracy. Kruglyak is cautioned that, if he fails to do this, he is subject to being held in contempt of court and losing the ability to proceed pro se in this matter. Lastly, Kruglyak's request to amend the pleading to substitute corrected case citations is **DENIED**.

The Clerk is directed to send copies of this Memorandum Order to all counsel of record and unrepresented parties.

**ENTERED:** March 25, 2025.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE